**Gregory JOHNSTONE, Petitioner,**

**v.**

**Walter J. KELLY, Superintendent, Attica Correctional Facility, Respondent.**

**No. 85 Civ. 9444–(CLB).**

United States District Court, S.D. New York.

April 29, 1986.

James C. LaForge, Philip L. Weinstein, New York City, for petitioner.

Robert Abrams, Atty. Gen., State of N.Y. by Joyce Andren, Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

By his petition and supporting memorandum of law filed on December 3, 1985, Petitioner Gregory Johnstone, a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On behalf of respondent, the Attorney General of the State of New York filed a memorandum of law in opposition to petitioner's application on January 21, 1986. Petitioner filed a Reply Memorandum of Law on February 4, 1986.

Petitioner's first trial on the underlying indictment resulted in a hung jury. He was tried a second time (Fraiman, J.) and was convicted on March 17, 1982 in Supreme Court, New York County, of arson in the second degree, N.Y. Penal Law § 150.15, and burglary in the first degree, N.Y. Penal Law § 140.30. He was sentenced to concurrent indeterminate terms of imprisonment from three to nine years on each count. The Appellate Division, First Department, affirmed petitioner's conviction on December 18, 1984. Petitioner's application for Leave to Appeal to the New York State Court of Appeals was denied on April 15, 1985. State remedies have been exhausted.

On November 16, 1980, at approximately 2:30 A.M., petitioner and two accomplices pried open the door of apartment # 8 in an apartment building at 115 West 143rd Street, New York City. Once inside, they set fire to the apartment. The fire totally destroyed apartment # 8 and caused damage to the apartments on the floors above. Several tenants in the building and a firefighter suffered injuries as a result of the fire.

In support of his application for a writ of habeas corpus, petitioner interposes a Sixth Amendment claim founded on the trial court's refusal to permit petitioner to relinquish his court-appointed counsel before trial and to conduct his own defense without the attorney's assistance. Respondent acknowledges that petitioner had invoked his constitutional right to represent himself, but contends that his request properly was denied because his intentions as expressed were not unequivocal and because his purported waiver of counsel was neither knowing nor intelligent.

Petitioner was represented in his first trial by a court-appointed attorney, Ira Van Leer. The jury failed to return a verdict and a mistrial was declared. Two months later, a jury was empaneled for a second trial on the same indictment. Mr. Van Leer remained the attorney of record for the petitioner. On January 5, 1982, the day before the commencement of the second trial, petitioner informed the court that he was dissatisfied with his present counsel and that he desired the services of a new attorney. The court denied petitioner's request. Petitioner then indicated that he wanted to represent himself at trial. In response, the court inquired into petitioner's education, age, employment and exposure to legal proceedings. (Tr. 6–7, 10). Detailing both the perils of self-representation and the comparative advantages of utilizing, cost free, the skills, training and experience of a seasoned defense attorney, the trial judge reminded petitioner of the seriousness of the crimes with which he was charged and the possible consequences of a conviction. Further, in response to the street-wise petitioner's proclamation that as a *pro se* defendant he would refuse to participate in the trial in his own defense and hence lay the foundations for a mistrial or reversal of the conviction (Tr. 6, 12), the trial judge explained patiently to him that he could not count on a reversal or retrial. (Tr. 6, 13). When petitioner persisted, the court conceded that he was competent (Tr. 25), but ruled that because of his age, education and vocational and legal inexperience, he was not qualified to conduct his own defense. (Tr. 27–28). The court directed Mr. Van Leer to continue as petitioner's defense counsel (Tr. 17–22) and stated for the record that the petitioner was not proceeding *pro se*. (Tr. 26).

Without intending any criticism of this particular trial judge, who is well known for patience, devotion to justice and hard work, we are constrained to observe that in this era of oppressive Big Government, there is a lamentable tendency on the part of bureaucrats generally, including some judges, to undertake the task of Big Daddy, and compel persons who are *sui juris*

to do that which is in their best interests whether they like it or not. There is an ever increasing tendency to act against individual freedom, while motivated by good intentions, based often in elitism or a perception that everyone else in the world is stupid. This "compulsory seat belts" thinking is demonstrated by much of the colloquy in this case:

> The Defendant: I don't want him [Attorney Van Leer]. Why are you bothering me? I said I do not want the man point blank. I do not want him. Why you keep bugging me about it? I don't want the man.
>
> The Court: You don't have the experience or the training to defend yourself.
>
> The Defendant: Yes, I do. I will just sit right there. (Tr. 16).

\* \* \* \* \* \*

> The Defendant: I don't want him.
>
> The Court: That may well be, but I am not going to allow you to represent yourself. (Tr. 17)

\* \* \* \* \* \*

> The Court: He is not capable of defending himself in a trial.
>
> Mr. Van Leer: He is intelligent, he reads all the minutes. He has all the minutes, he can proceed. His anger is generated towards me. (Tr. 18–19).

\* \* \* \* \* \*

> Mr. Van Leer: My being here with him would only generate disruption or something. I do not want to disrupt the proceedings.
>
> The Court: As a member of the bar and an officer of the Court, it is your duty to defend the Defendant to the very best of your ability. I know that you will do that. (Tr. 19)

\* \* \* \* \* \*

> Mr. Van Leer: He may want to cross examine himself.
>
> The Court: You are conducting this defense, not the Defendant. (Tr. 21).

The Court terminated the discussion by saying:

The Court: I see no indication that the Defendant is not competent. He seems perfectly competent. I think he is being stubborn and is not thinking things through. I see no indication he is not competent. (Tr. 25)

At page 27 of the record, the prosecutor remonstrated tactfully with the Court to no avail. The Appellate Division affirmed petitioner's conviction without even discussing the point.

On January 6, 1982, before trial began and outside the presence of the jury, the petitioner asked to make the opening statement and to begin cross-examination of the witnesses. (Tr. 33–34). The court denied the request. Over petitioner's protests, Mr. Van Leer conducted petitioner's defense. Petitioner engaged in colloquy with the trial judge during the course of trial, but never while the jury was present. Finally, at the close of evidence, Mr. Van Leer informed the trial judge that petitioner wished to make his closing argument personally. Although questioning petitioner's qualifications, the Court relented and permitted petitioner to make the summation. After two days' deliberation, the jury returned a verdict of guilty. The conduct of the trial was in all respects fair and petitioner's guilt was established clearly, beyond a reasonable doubt.

■ The Sixth Amendment guarantees a criminal defendant not only the right to the assistance of counsel but also the corollary right to dispense with counsel and to present his defense in the manner of his choosing. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This right to represent oneself against the marshalled forces of government, to undertake personally to convince a jury of one's innocence, embodies principles of individual integrity, autonomy and self-expression so fundamental to our system that its abrogation calls into question the entire fabric of an individual's innate personal liberty.

■ The Constitution is a seamless web of rights and liberties—not conferred but guaranteed—against the intrusive, offensive and sometimes paternalistic presence of Big Government. When a criminal defendant elects to stand at the Bar in his own defense, and he does so knowingly, voluntarily and unequivocally, a court is bound by the Constitution to honor that election, however suicidal it may appear to be. At trial, the criminal defendant is confronted with the possible loss of his liberty, his dignity and a host of other things; on this occasion perhaps above all others, he is entitled to speak freely, to control his own future and exercise his free will. That this course may hasten and/or lengthen his incarceration is of no moment and should not concern the trial judge. The Sixth Amendment affords no lesser rights to the foolish than to the wise. If freely chosen, the right to go to trial without counsel is protected by Constitutional, and indeed natural, law.

■ We next consider whether petitioner, being fully informed, deliberately and voluntarily waived assistance of counsel and unequivocally sought to undertake his own defense. The trial court did not find that he did not do so, nor is there anything in the record which would suggest such a finding. There is no indication in the trial record that the petitioner, then aged 18, was under any legal or mental disability that impaired his capacity to manage his own affairs. Indeed, his appointed counsel informed the judge that petitioner had familiarized himself with the indictment, the minutes of the first trial and other significant documents relating to his defense. Once apprised of petitioner's intentions to reject Mr. Van Leer's free representation, even in the absence of substitute counsel, the trial judge entered into a discourse with petitioner explaining the pitfalls of self-representation and advising him to reconsider his decision. Although he found that the petitioner lacked the education, training or experience to conduct his defense skillfully, at least by contrast to his appointed counsel, the judge conceded that the petitioner was "perfectly competent" and observed that he was just being stubborn. (Tr. 25) A free American has the right to be stub-

born. Under the Constitution, the inquiry should have ended there.

However benign or protective his motives, however firmly he believed that the petitioner was "not thinking things through" (Tr. 25), the trial judge should have acceded to petitioner's request. The standard in such cases is not what the judge thought was in petitioner's best interests, but what petitioner believed to be such, after being fully informed. As our Court of Appeals has observed, "even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner." *United States v. Denno*, 348 F.2d 12, 15 (2d Cir.1965) (Waterman, J.), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).

■ Respondent challenges the intelligence of petitioner's election by suggesting that he chose to waive his right to counsel only because he hoped to parlay his *pro se* defense into a mistrial and reversal, and, ultimately, a new lawyer. At the outset, the Court observes that such inquiry into petitioner's motivations is improper, just as the cause for his claimed disenchantment with his attorney is of no proper concern to the Court when presented in this context. *See United States ex rel. Jackson v. Follette*, 425 F.2d 257, 259 (2d Cir.1970). If voluntarily and unequivocally invoked before trial after being fully inquired of and informed by the Court, the right to defend *pro se* is absolute. *See United States v. Brown*, 744 F.2d 905, 908 (2d Cir.1985).

The record here shows no misunderstanding by petitioner of the possible consequences of his decision or the absence of an intelligent waiver. The trial judge warned him on at least two occasions that his election to forego counsel could increase the likelihood of conviction. On both occasions the petitioner said he understood that risk. That petitioner's decision to defend *pro se* may have been precipitated by the court's proper refusal to incur trial delay in order to obtain substitute counsel at that late stage, does not diminish the genuineness, validity or singlemindedness of petitioner's election. Similarly, petitioner's equivocation as to the character of his intended defense—whether to participate or sit inert—does not compromise his decision to go to trial without counsel.

The Court is convinced from the record as a whole that petitioner was fully aware of the possible consequences of his decision, but that he nevertheless adhered to his rejection of Mr. Van Leer's assistance. As the petitioner himself reminded the court, this is his trial (Tr. 17) and, indeed, the Constitution guarantees that his defense, should he choose to interpose one, is *his* defense. *See McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984); *Faretta, supra* 422 U.S. at 821, 95 S.Ct. at 2534. Unwanted appointed counsel, however skillful, represents no one but the perceived need of Big Government to deprive individuals of their freedom of action, supposedly to keep the scales of Justice in balance. Those bureaucratic interests must yield to petitioner's constitutional right.

Having found that the Sixth Amendment rights of Mr. Johnstone to proceed without an attorney were violated by the trial court intentionally and after notice, we must consider what is to be done about it at this stage. As noted earlier, guilt in this case is clear. The purpose of any system of criminal justice including our own is not simply to preserve for their own sake, as tribal relics of our forebears' troubles with King John, some peculiar notions as to how criminal trials should be conducted. Rather, we seek to establish and maintain a system which with minimal social and transactional cost will assure insofar as possible that the guilty will be convicted and punished, and that innocent people and those whose cases are doubtful will be set free. In doing this we must recognize that there is no perfect trial, just as there is no perfect crime. *See Delaware v. Van Arsdall*, —— U.S. ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *United States v. Hasting*, 461 U.S. 499, 508–09, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96 (1983).

To assure that we do not exalt theory over substance, and to protect society's interest in a practical fashion, the Supreme Court has endorsed the doctrine of harmless constitutional error. *Chapman v. United States*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966). Accordingly, it should not be necessary to set aside this conviction and require a new trial of this obviously guilty felon, if, upon the record before this Court, we can say that the constitutional error was harmless beyond a reasonable doubt.

There is some difficulty with this concept. As recently as January 23, 1984 in *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 951, 79 L.Ed.2d 122 at footnote 8, a majority of the Court, per Justice O'Connor, issued the following dictum on the subject:

> "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."

The premise set forth in that footnote seems hardly self-evident. Nor is it required as a holding by the facts in *McKaskle*. In that case, the respondent state prisoner had been permitted to proceed *pro se*. The trial court had appointed standby counsel to assist him. On appeal following conviction, defendant-respondent claimed that his Sixth Amendment right to conduct his own defense was violated by standby counsel's unsolicited excessive involvement. The holding of *McKaskle* is simply that the regulation by the trial court of the activities of standby counsel appointed to assist a defendant who is proceeding *pro se* will be upheld providing no substantial right is adversely affected.

■ As can be seen, the footnote quoted above is not necessary to the resolution of the issues presented to the Supreme Court in *McKaskle*. Harmless error exists and should be found whenever it would be a useless waste of judicial resources to retry

a case, as, for example, when it can be shown beyond a reasonable doubt that the constitutional violation could not have affected the outcome of the trial. *Chapman, supra* 386 U.S. at 22, 87 S.Ct. at 827.

On April 7, 1986 the Supreme Court decided *Delaware v. Van Arsdall*, — U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674. There, in an opinion by Justice Rehnquist joined by three members of the majority in *McKaskle*, the Court employed harmless error analysis to uphold the state court conviction of the respondent whose confrontation rights under the Sixth Amendment had been violated. The Court conceded that the trial court improperly had restricted cross-examination designed to show bias, but concluded that this clearly erroneous ruling could be found to be "harmless in the context of the trial as a whole." *Id.* at ——, 106 S.Ct. at 1433. As might be anticipated, the majority in *Van Arsdall* failed to cite or comment upon footnote 8 in the *McKaskle* case. It would seem at least to this writer that the opportunity to show bias on the part of a prosecution witness by cross-examination is a more valuable and more practical Sixth Amendment right than the right with which we are presently concerned; a fortiori if an unfair and improper curtailment of cross-examination can be harmless error in a Sixth Amendment context, then an unfair and improper denial of the right, in the words of the late Judge Waterman, to "go to jail under his own banner" should also be susceptible to harmless error analysis.

■ Our task would be easier if the Supreme Court would refrain entirely from footnotes, and curtail gratuitous observations (dicta) not required by the case. Our situation would be improved even more if subsequent decisions inconsistent with such dicta would cite and disapprove these prior expressions. Whatever the reasons of practicality that prevent the Supreme Court from doing this, we conclude that under the current Sixth Amendment jurisprudence as reflected in *Van Arsdall*, the clear constitutional violation present in this case *is* susceptible of harmless error analy-

sis notwithstanding the dictum in *McKaskle*. Also, in the total context of Johnstone's case, denial of his right to represent himself was harmless error beyond a reasonable doubt.

For this reason the petition is denied. The Clerk shall enter final judgment.

Because this petition presents a serious issue upon which reasonable persons could differ, the Court directs that a certificate of probable cause to appeal shall issue pursuant to 28 U.S.C. § 2253 and Rule 22(b) of the Federal Rules of Appellate Procedure. With no irony intended, the Clerk of the Court of Appeals, on receipt of a Notice of Appeal, is respectfully requested to appoint counsel for petitioner. *See* 28 U.S.C. § 1915(a); Rule 24(a), F.R.App.P.

So Ordered.