Gregory JOHNSTONE,
Petitioner-Appellant,

v.

Walter ·J. KELLY, Superintendent,
Attica Correctional Facility,
Respondent-Appellee.

No. 160, Docket 86–2199.

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 1986.

Decided Dec. 24, 1986.

James C. La Forge, New York City (Philip L. Weinstein, New York City, on the brief), for petitioner-appellant.

Esther Furman, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen.,

Maryellen Weinberg, Robert J. Schack, Asst. Attys. Gen., New York City, on the brief), for respondent-appellee.

Before VAN GRAAFEILAND, MESKILL, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the issue whether denial of a defendant's constitutional right to represent himself at a criminal trial can be harmless error. The issue arises on an appeal by Gregory Johnstone from a judgment of the District Court for the Southern District of New York (Charles L. Brieant, Jr., Chief Judge) denying his petition for a writ of habeas corpus to challenge his state court conviction. Although concluding that the state trial court infringed Johnstone's Sixth Amendment right to self-representation, the District Court dismissed Johnstone's petition upon a finding that the constitutional violation was harmless error. 633 F.Supp. 1245, 1250-51 (1986). Because the District Court erred in applying a harmless error test to a violation of the right to self-representation, we reverse the District Court's decision and remand with instructions to order petitioner's release unless the State promptly affords him a new trial.

### Background

In 1981, the State of New York indicted Johnstone on arson and burglary charges in connection with the destruction of an apartment building in New York City. His first trial in the Supreme Court of New York ended in a mistrial when the jury failed to agree on a verdict. At that time Johnstone was represented by Ira Van Leer, a court-appointed attorney.

On January 4, 1982, two days before the scheduled start of his second trial, Johnstone appeared before Judge Burton G. Roberts to request that Atty. Van Leer be relieved as his counsel and that new counsel be appointed. Judge Roberts denied Johnstone's requests. On January 5, 1982, Johnstone appeared before Judge Arnold

G. Fraiman, the judge presiding over his second trial, to renew his request for different appointed counsel. At that time, Johnstone expressed his displeasure with Atty. Van Leer's handling of the case; in particular, he objected to Atty. Van Leer's filing of a notice of an insanity defense in the first trial without consulting Johnstone. Judge Fraiman found these grounds inadequate to justify appointment of new counsel. Upon learning that he could not obtain new counsel, Johnstone stated that he preferred to conduct his own defense rather than be represented by Atty. Van Leer. Judge Fraiman inquired into Johnstone's age, education, employment, and familiarity with legal proceedings. Judge Fraiman then contrasted Johnstone's abilities with those of Atty. Van Leer, pointing out that Van Leer had avoided a conviction in the first trial. Emphasizing Johnstone's comparative youth, lack of legal training, and minimal experience with legal proceedings, Judge Fraiman repeatedly warned Johnstone of the grave risks of defending himself against serious charges.

Despite Judge Fraiman's stern warnings, Johnstone persisted in his request to proceed *pro se.* Johnstone stated that he had studied the indictment and had carefully read the papers in his case each night. Upon the court's direction to Van Leer to continue his representation of Johnstone, Van Leer amplified Johnstone's remarks, noting that "[Johnstone] is intelligent, he reads all the minutes. He has all the minutes. He can proceed." Judge Fraiman acknowledged that Johnstone was competent to stand trial; nonetheless, he concluded that Johnstone was "not qualified" to represent himself because he lacked "the requisite education, background or training or experience." Judge Fraiman found that "[Johnstone] is eighteen, he has scarcely any formal education so far as I can ascertain, he has no known occupation and he has virtually no previous exposure to legal procedures, except for the first trial."

At the commencement of trial on January 6, 1982, Johnstone asked to make the opening statement and to begin cross-examination of the witnesses. Judge Frai-

man ruled that petitioner could not conduct the defense himself and directed Van Leer to make Johnstone's opening statement. Van Leer conducted Johnstone's defense during the presentation of evidence. At the close of evidence, Johnstone asked to make the closing argument. After vehemently discouraging Johnstone from attempting his own summation, Judge Fraiman allowed Johnstone to present his summation himself. The jury subsequently convicted Johnstone.

Upon exhaustion of state court remedies, Johnstone filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982) with the District Court. Chief Judge Brieant found that Johnstone had knowingly and voluntarily waived his right to counsel. Although concluding that the trial judge violated Johnstone's Sixth Amendment right to proceed *pro se*, the District Judge held that such error was harmless and therefore refused to grant the writ. 633 F.Supp. at 1250–51.

## Discussion

■ We agree with Chief Judge Brieant that the state trial court violated Johnstone's Sixth Amendment right to proceed *pro se*. In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court declared that this right may be exercised by all criminal defendants who knowingly, voluntarily, and unequivocally waive their right to appointed counsel. *Id.* at 835–36, 95 S.Ct. at 2541. The record in the present case indicates that Johnstone was competent to stand trial and that he clearly sought to represent himself after being duly warned of the risks of doing so. Nevertheless, Judge Fraiman denied this

request on the ground that Johnstone lacked the "requisite education, background or training or experience." *Faretta* imposes no such qualifications on the right to defend *pro se*.

■ The State of New York contends that Johnstone sought to represent himself merely as a threat designed to obtain different appointed counsel.[1] Though the record indicates that Johnstone preferred to have new counsel appointed, it also indicates that Johnstone steadfastly sought to represent himself despite numerous warnings from Judge Fraiman of the risks of forgoing counsel.[2] We agree with Chief Judge Brieant's conclusion that Johnstone's persistent requests to represent himself satisfied *Faretta's* requirement of a knowing, voluntary, and unequivocal waiver of the right to appointed counsel.

■ We are not unmindful of trial judges' concern with ensuring that criminal defendants receive adequate legal representation. Although the Constitution prohibits courts from requiring criminal defendants to be defended by counsel, *see Faretta v. California, supra*, 422 U.S. at 833, 95 S.Ct. at 2540, it does not foreclose trial courts from using less overbearing means of ensuring that *pro se* defendants have adequate legal representation. In cases in which the trial judge fears that a *pro se* defendant lacks the ability to defend himself adequately, the judge can appoint counsel to assist the defendant in his *pro se* defense. *See Faretta v. California, supra*, 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46; *McKaskle v. Wiggins*, 465 U.S. 168, 183–85, 104 S.Ct. 944, 953–54, 79

---

1. The State attempts to bolster its "no waiver" argument by suggesting that criminal defendants generally will use the threat of self-representation as a means for obtaining different appointed counsel. We find this argument wanting because the risk of having to defend serious criminal charges without any lawyer should a request to proceed *pro se* be granted seems to outweigh any advantage from obtaining different counsel. *Cf. Faretta v. California, supra*, 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541, n. 46 (noting that a defendant who exercises his right to appear *pro se* "cannot thereafter com-

plain that the quality of his own defense amounted to a denial of 'effective assistance of counsel' ").

2. A request to proceed *pro se* is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel. *See Faretta v. California, supra*, 422 U.S. at 810 n. 5, 835–36, 95 S.Ct. at 2529 n. 5. *United States v. Denno*, 348 F.2d 12, 14 n. 1, 16 (2d Cir.1965), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).

L.Ed.2d 122 (1984). Such "standby counsel" should not, however, assume the primary role in defending unless the defendant so requests. *See id.* at 181–83, 104 S.Ct. at 952–53.

The principal issue on this appeal is whether the state trial court's violation of Johnstone's Sixth Amendment right to proceed *pro se* requires reversal automatically or may be disregarded if properly determined to be harmless error. Chief Judge Brieant determined that the denial of the right to proceed *pro se,* like certain other procedural rights, is subject to harmless error analysis. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Delaware v. Van Arsdall,* — U.S. ——, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Applying this standard, the District Court denied Johnstone's petition for a writ of habeas corpus. 633 F.Supp. at 1250–51.

Although the Supreme Court has never directly confronted the question raised by this appeal, it has strongly suggested in two recent cases that denial of the Sixth Amendment right to self-representation can never be harmless error. In *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court addressed the proper role of standby counsel where a criminal defendant has elected to proceed *pro se.* In concluding that the right to self-representation must impose some limitations on the level of participation by standby counsel, the Court commented:

> Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.

*McKaskle v. Wiggins, supra,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

The Supreme Court endorsed this reasoning in *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). In *Flanagan,* the petitioners claimed that the disqualification of counsel of their choice had deprived them of the Sixth Amendment right to assistance of counsel. In finding that such a denial was not a collateral order reviewable prior to final judgment, the Supreme Court noted:

> Petitioners correctly concede that post-conviction review of a disqualification order is fully effective to the extent that the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself. See *Faretta v. California,* 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562] (1975). Obtaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding. See *McKaskle v. Wiggins, ante,* at 177–178, n. 8.... [104 S.Ct. at 950–52 n. 8] No showing of prejudice need be made to obtain reversal in these circumstances because prejudice to the defense is presumed.

*Flanagan v. United States, supra,* 465 U.S. at 267–68, 104 S.Ct. at 1055–56.

The Supreme Court's statements in *McKaskle* and *Flanagan* reflect its approach to the harmless error doctrine in the context of constitutional claims. The Court developed the doctrine of harmless error in order to preserve convictions resulting from fair trials in cases in which some immaterial error occurred. *See Chapman v. California, supra,* 386 U.S. at 23–24, 87 S.Ct. at 827–28: *Delaware v. Van Arsdall, supra,* 106 S.Ct. at 1436–37. Since a conviction will be upheld only if the result would almost certainly have been the same had the error not occurred, the doctrine promotes judicial economy without sacrificing fairness. However, despite the strong public interest in judicial economy, the Supreme Court has recognized that some constitutional errors require reversal without regard to whether such errors might have affected the outcome of the trial. *See Chapman v. California, supra,* 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8, and accom-

panying text; *Delaware v. Van Arsdall, supra,* 106 S.Ct. at 1437.

█ Since harmless error analysis serves to promote fair outcomes at trial, its application has generally been limited to denial of rights accorded defendants to facilitate their defense or to insulate them from suspect evidence. *See Chapman v. United States,* 553 F.2d 886, 891–92 (5th Cir.1977). Harmless error analysis has not been applied to rights that are essential to the fundamental fairness of a trial or that promote systemic integrity and individual dignity. Thus, a state cannot rely upon a coerced confession, *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), it must provide a trial before an impartial tribunal, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *Vasquez v. Hillery,* 106 S.Ct. 617, 622–24 (1986), it must provide an indigent accused with counsel upon request, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and it cannot win conviction in a jury trial upon a directed verdict. *See Rose v. Clark,* 106 S.Ct. 3101, 3106 (1986) (citing *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977)). These rights relate to either fundamental fairness or systemic integrity and individual dignity.

The right to self-representation derives principally from interests beyond ensuring that trial outcomes are fair. *See Chapman v. United States, supra,* 553 F.2d at 891–92. The Sixth Amendment's right to self-representation reflects values of individual integrity, autonomy, and self-expression. *See Faretta v. California, supra,* 422 U.S. at 834, 95 S.Ct. at 2540; *Flanagan v. United States, supra,* 465 U.S. at 268, 104 S.Ct. at 1056. Violation of the right to self-representation sacrifices these values even in the absence of effect on the outcome of the trial. *See id.*

█ Application of harmless error analysis is particularly inappropriate to denial of the right to self-representation because a harmless error standard would, in practical effect, preclude vindication of the right. Since seasoned appointed counsel can almost invariably provide better legal representation than a *pro se* defendant, denial of a request to proceed *pro se* could rarely, if ever, be shown to have been prejudicial. The Supreme Court emphasized this concern in *McKaskle v. Wiggins, supra,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

For all of these reasons, we agree with the five circuits that have concluded that violation of a defendant's right to proceed *pro se* requires automatic reversal of a criminal conviction.[3] *See Dorman v. Wainwright,* 798 F.2d 1358, 1370 (11th Cir. 1986); *United States v. Rankin,* 779 F.2d 956, 960–61 (3d Cir.1986); *Wilson v. Mintzes,* 761 F.2d 275, 286 (6th Cir.1985); *Bittaker v. Enomoto,* 587 F.2d 400, 403 (9th Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 386 (1979); *Chapman v. United States,* 553 F.2d 886, 891–92 (5th Cir.1977).

In applying a harmless error test to denial of the right to self-representation in *Johnstone,* Chief Judge Brieant was influenced most strongly by the Supreme Court's recent decision in *Delaware v. Van Arsdall,* —— U.S. ——, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Van Arsdall,* the Court required application of harmless error analysis to a denial of a defendant's confrontation rights under the Sixth Amendment by improper restriction of cross-examination designed to show that a prosecution witness was biased. The confrontation right was not deemed so vital to the fundamental fairness of every trial as

---

**3.** This conclusion does not disturb our holdings in *Hodge v. Police Officers: Colon, # 623; and Repuerto, # 145,* 802 F.2d 58, 62 (2d Cir.1986), and *Jenkins v. Chemical Bank,* 721 F.2d 876, 880 (2d Cir.1983), applying a harmless error analysis to denial of appointed counsel in cases in which a statute permits the district court to appoint counsel. *See* 28 U.S.C. § 1915(d)

(1982); 42 U.S.C. § 2000e–5(f) (1982). Since the authority for appointed counsel in these civil cases is statutory and is within the broad discretion of the trial court, denial of a request for appointed counsel does not invoke the same level of concern for systemic integrity and individual dignity as is presented here.

to require automatic reversal for any impairment of the right. *See Delaware v. Van Arsdall, supra,* 106 S.Ct. at 1437–38. Moreover, application of a harmless error standard to the confrontation right does not invariably preclude its vindication; denial of the right of confrontation can prejudice the outcome of a trial. *See Delaware v. Van Arsdall, supra,* 106 S.Ct. at 1437–38 (discussing *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Nothing in the *Van Arsdall* opinion contradicts the statements in *McKaskle* and *Flanagan* regarding the inapplicability of harmless error analysis to violations of the right to self-representation nor suggests that the harmless error doctrine should be expanded beyond its traditional domain. In fact, *Van Arsdall* reaffirms that

> some constitutional errors—such as denying a defendant the assistance of counsel at trial, or compelling him to stand trial before a trier of fact with a financial stake in the outcome—are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case.

*Delaware v. Van Arsdall, supra,* 106 S.Ct. at 1437 (citations omitted).

### Conclusion

For the foregoing reasons, we reverse the District Court's denial of the writ of habeas corpus and remand to the District Court with instructions to order the petitioner's release unless the State promptly affords him a new trial.

Reversed and remanded.