Arthur LARRABEE, Petitioner,

v.

George BARTLETT, Superintendent, Elmira Correctional Facility, Respondent.

No. 95–CV–467.

United States District Court, N.D. New York.

July 9, 1997.

---

Arthur Larrabee, Elmira, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York, The Capitol Litigation Bureau, Albany, NY, for Respondent.

### MEMORANDUM DECISION AND ORDER

McAVOY, Chief Judge.

By his petition and supporting Memorandum of Law filed on March 27, 1995, Petitioner Arthur Larrabee, a *pro se* state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On behalf of Respondent, the Attorney General of the State of New York filed a Memorandum of Law in Opposition to Petitioner's application on July 18, 1995. Petitioner filed a Reply Memorandum of Law on July 24, 1995.

Larrabee was jointly tried and convicted with two other co-defendants, after a jury trial before Judge Wallace C. Van Auser, Oswego County Court, on the charge of Burglary in the Third Degree, *see* N.Y. Penal Law § 140.20 (McKinney 1988), Possession of Burglars Tools, *see* N.Y. Penal Law § 140.35 (McKinney 1988), and Petit Larceny, *see* N.Y. Penal Law § 155.25 (McKinney 1988). Larrabee was sentenced as a persistent felony offender to a term of incarceration of fifteen years to life imprisonment on April 17, 1992. On July 15, 1994, his conviction was affirmed by the Supreme Court of the State of New York, Appellate Division, Fourth Department. *People v. Treadwell,* 206 A.D.2d 861, 616 N.Y.S.2d 127 (4th Dep't 1994). The New York State Court of Appeals denied leave to appeal on January 3, 1995, and a subsequent "Application for Reconsideration" to the New York Court of Appeals was denied on January 23, 1995. Having exhausted his state remedies, Petitioner instituted a writ of habeas corpus and raised as his sole claim for relief that he was denied his constitutional right to self-representation. For the reasons set forth below, the Petition is granted.

## FACTS

On or about August 19, 1991, Petitioner and two other co-defendants were arrested in connection with a burglary committed at the Express Mart convenience store in Pulaski, New York. Petitioner was scheduled to be tried with the co-defendants on January 13, 1992. On the morning of trial, Petitioner's assigned counsel, Mr. Lambertus Jansen, failed to appear due to his ill health. Instead, Jansen submitted a motion for a two week adjournment or a severance. At proceedings conducted on January 13th, the court denied the motion for severance and adjourned the trial to January 27, 1992. The court also discharged Mr. Jansen from his representation of Petitioner and assigned Robert J. McBride, Esq. to serve as defense counsel.

On January 20th, a week before the scheduled commencement of trial, Petitioner made a written request to Judge Van Auser to proceed *pro se*. Petitioner expressed that he "[did] not wish to postpone this trial or cause it to be delayed by this letter." When court convened on January 27th, Judge Van Auser conducted a colloquy with Petitioner regarding his request. The Court first asked Petitioner if he felt qualified to represent himself (Trial Transcript ["T"] at 2). The Judge then discussed the qualifications necessary to become a trial attorney, and asked Petitioner if he thought he was qualified in the areas of trial strategy and trial psychology (T. 2–3). Judge Van Auser asked Petitioner if he thought he could properly make objections, ask questions, and know when not to ask questions. Petitioner replied that he wasn't sure (T. 2–4). Judge Van Auser wanted the matter clear on the record and asked Petitioner again whether he still wished to represent himself (T. 4). Petitioner expressed that he did (T. 4). Judge Van Auser then granted his request to proceed *pro se*, but warned Petitioner that the court would not assist him in his defense and that assigned counsel would be required to sit with him and advise him (T. 4–5).

At that point, however, the prosecutor and counsel for both co-defendants objected to Petitioner's request on the grounds that Petitioner might prejudice the co-defendants'

cases (T. 7–11). The Prosecutor mentioned that Petitioner had not viewed the People's evidence, and that the "prudent" matter would be for the Court to deny Petitioner's application, "especially in light of his lack of understanding, of certain legal principles, practices and the like" (T. 10). Counsel for the co-defendants agreed with the prosecutor, and requested that the court sever their trial from Petitioner's trial (T. 10–11). As a result of these objections, Judge Van Auser changed his mind, and decided to prohibit Petitioner from proceeding *pro se:*

> I think that all things considered here, the fact that inartful presentation of questions and witnesses by Mr. Larrabee personally could well prejudice, not only himself, but the other defendants, together with the fact that Mr. Larrabee has not even seen the District Attorney's file and evidence box . . . it doesn't make any sense at all for Mr. Larrabee to represent himself. I cannot allow it in this case. This is the day of trial, and Mr. Larrabee has specified in his request concerning representing himself that there be no delay. Well, I can grant that part of his request. There will be no delay. Your request to represent yourself is denied, Mr. Larrabee. (T. 13–14).

Petitioner proceeded to trial with his court-appointed counsel, and was convicted as a persistent felony offender and sentenced to a term of incarceration of fifteen years to life imprisonment on April 17, 1992.

## DISCUSSION

### A. Standard of Review

Petitioner raises only one claim as a basis for relief—that he was denied his constitutional right to self-representation. When entertaining an application for a writ of habeas corpus contesting a state court judgment, any factual determination by the state court shall be presumed to be correct unless it is "not fairly supported by the record." 28 U.S.C. § 2254(d). Magistrate Judge Gustave J. DiBianco, after reviewing the case under this standard, issued a Report–Recommendation recommending that the petition be denied and dismissed. Because objections have been filed, this recommendation is subject to de novo review by this Court, which may

accept, reject, or modify it, in whole or in part. *See* 28 U.S.C. § 636(b)(1).

## B. The Right to Self–Representation

■ The Sixth Amendment of the United States Constitution grants a criminal defendant the right to self-representation in proceedings against him. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). If a defendant chooses to forego the services of defense counsel and act on his own behalf, the state cannot compel him to accept a lawyer he does not want. *Faretta*, 422 U.S. at 833, 95 S.Ct. at 2540. The right to proceed *pro se* may be exercised by "all criminal defendants who knowingly, voluntarily, and unequivocally waive their right to appointed counsel." *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir.1986) (*citing Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541–42). A *pro se* defendant need not possess the skill and experience of a lawyer, although he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that his choice was made with "his eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942); *see also United States v. Dougherty*, 473 F.2d 1113, 1128 (D.C.Cir.1972). (defendant has moral right to stand alone in his hour of trial).

■ However, the request to proceed *pro se* must be timely asserted. Although *Faretta* implies a right of self-representation, the Second Circuit has held that the right to proceed *pro se* is unqualified only when exercised before the commencement of trial. *See United States v. Matsushita*, 794 F.2d 46, 51–52 (2d Cir.1986); *United States v. Brown*, 744 F.2d 905, 908 (2d Cir.1984); *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir.1976). Once trial has begun, the defendant's right to represent himself is sharply curtailed. *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir.1965). The right then becomes qualified, and "there must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance." *Maldonado*, 348 F.2d at 15. Thus, the timeliness of a request for pro se representation is an essential factor in the granting of such a request.

### 1. The State Court's Finding that Petitioner Did Not Timely Assert His Right to Proceed Pro Se is Not Fairly Supported by the Record.

The Second Circuit's bright-line rule that the right to proceed *pro se* is unqualified before the commencement of trial makes the issue of timeliness both tangible and unambiguous; hence its determination is conclusive. *Matsushita*, 794 F.2d at 51–52. The Second Circuit's standard for assessing the "timeliness" of a *pro se* request depends upon whether trial proceedings have commenced. *See Brown*, 744 F.2d at 908 (mid-trial request to proceed *pro se* held untimely); *Sapienza*, 534 F.2d at 1010 (request to proceed *pro se* made at end of trial held untimely). *But see Wiesner v. Abrams*, 726 F.Supp. 912, 920 (E.D.N.Y.1989), *aff'd*, 909 F.2d 1473 (2d Cir.1990) (request to proceed *pro se* held timely when made on day of trial, but before "meaningful trial proceedings").

■ In the present case, Petitioner sent a written request to proceed *pro se* to Judge Van Auser on January 20, 1992; this was one week before the scheduled commencement of trial. On the day of trial, Judge Van Auser conducted a trial conference allowing Petitioner to proceed *pro se* with his counsel retained for guidance. This conference occurred before the jury was sworn. (T. 5). Accordingly, the Court concludes that Petitioner's request was timely.

The facts of the present case distinguish it from the situation in *United States v. Betancourt–Arretuche*, 933 F.2d 89 (1st Cir.1991), which Magistrate DiBianco cited in support of his recommendation to affirm the "untimeliness" of Petitioner's request. In *Betancourt*, the court held petitioner's *pro se* request, on the day of trial, untimely because it occurred after the jury had been selected and sworn. *Id.* at 96. The logic of the *Betancourt* decision stems from a long line of Supreme Court decisions holding that in a criminal trial, jeopardy attaches when the jury is sworn. *See Serfass v. United States*,

420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In the present case, Petitioner made his request one week before trial, well before the jury had been sworn; therefore, *Betancourt* is not applicable. Because the Court must: find that Petitioner's request was timely asserted, Petitioner had an unqualified right to proceed *pro se.*

### 2. The State Court Improperly Ignored Petitioner's Unqualified Right to Proceed Pro Se.

The State Court improperly denied Petitioner's request to proceed *pro se* due to the potential disruption to the proceedings in progress. Specifically, Judge Van Auser reasoned that in light of Petitioner's lack of understanding of certain legal principles and practices, "inartful presentation of questions and witnesses by Mr. Larrabee personally could well prejudice, not only himself, but the other defendants" (T. 11). An inquiry into possible prejudice appears to be improper because the issue of prejudice is irrelevant. It is well settled that when a Petitioner asserts a timely request to proceed *pro se,* he enjoys an unqualified right to represent himself. *See Matsushita,* 794 F.2d at 51–52; *Sapienza,* 534 F.2d at 1010. The fact that the defendant is being tried with co-defendants whom he might prejudice by proceeding *pro se* should not require the defendant to relinquish his Sixth Amendment right due to the possible disruption of the joint trial. Although the Second Circuit has not specifically addressed the right to proceed *pro se* in a case involving multiple defendants, the Second Circuit's decision in *United States v. Sacco,* 563 F.2d 552, 556 (2d Cir.1977) provides guidance on this issue.

In *Sacco,* the court addressed whether a defendant's request for severance of the joint trial should automatically be granted when a co-defendant elects to proceed *pro-se.* 563 F.2d at 556. While the *Sacco* court recognized that a joint trial had the potential for prejudice, *United States v. Veteto,* 701 F.2d 136, 139 (11th Cir.1983) (acknowledging that joint trial is "pregnant with prejudice"), the court disavowed a per se rule of mandatory severance of trials, and instead took steps to minimize such prejudice. *Sacco,* 563 F.2d at 556.

These steps included: (1) appointing standby counsel, (2) warning the *pro se* defendant that he will be held to the rules of law and evidence, (3) admonishing the defendant that he should refrain from speaking in the first person in his comments on the evidence, (4) instructing the jury prior to closing remarks, during summation, and in the final instructions that nothing the lawyers said is evidence in the case, and (5) making it clear to the jury at the outset that anything the *pro se* defendant says in his "lawyer" role is not evidence. *Id.* at 556–57.

By implementing these safeguards, the *Sacco* court obtained the *pro se* defendant's cooperation which allowed the joint trial, requested in the interests of efficiency, to proceed. Therefore, it is improper to deny a defendant's request for self-representation based upon speculation that trial would be disrupted when a court can take steps to minimize the risk of prejudice and allow the joint trial to continue. *Accord, Person v. Miller,* 854 F.2d 656 (4th Cir.1988) (safeguards taken for *pro se* defendant adequately protected co-defendants' right to fair trial); *United States v. Oglesby,* 764 F.2d 1273 (7th Cir.1985); *United States v. Veteto,* 701 F.2d 136 (11th Cir.1983).

In *United States v. Dougherty,* the D.C. Circuit specifically addressed a defendant's right to proceed *pro se* in a case involving multiple co-defendants. 473 F.2d 1113, 1122–27 (1972). The *Dougherty* court held that it is improper to deny a defendant the fundamental right of self-representation in order to insure an orderly and efficient trial. 473 F.2d at 1126. In reaching its decision, the court considered the general likelihood that "a measure of unorthodoxy, confusion and delay is likely, perhaps inevitable, in *pro se* cases." *Dougherty,* 473 F.2d at 1124. Furthermore, the court noted that even the appointment of amicus counsel to assist the *pro se* defendant will not always resolve all the problems presented by *pro se* defendants in the multi-defendant context. *Dougherty,* 473 F.2d at 1125–26. In rendering a decision preserving the constitutional right of self-representation, the *Dougherty* court recommended that "if the assertion of a *pro se* right makes a multi-defendant trial unman-

ageable, or unfair to the other defendants, the remedy lies in severance." 473 F.2d at 1126. Indeed, courts have been hesitant to curtail the constitutional protections of defendants by virtue of their joint trial.[1]

On the other hand, it is well settled that the right to self-representation, although asserted before trial, can be constructively waived due to disruptive behavior during trial. *Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46. Naturally, this limitation applies to defendants asserting *pro se* defenses in multiple defendant trials as well. *See Dougherty,* 473 F.2d at 1124–27. In *Dougherty,* the court characterized "disruptive" as evincing a defendant's intent to upset or unreasonably delay the hearing. 473 F.2d at 1127. In the present case, Petitioner sent a written request to proceed *pro se,* stating that he "[did] not wish to postpone this trial or cause it to be delayed by this letter." Furthermore, Petitioner did not engage in any disruptive conduct, let alone conduct that amounted to the level of disruption sufficient to waive his right to self-representation. For example, in *Illinois v. Allen,* the Supreme Court ruled that a defendant can lose his constitutional right to be present at trial if he insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970). In *Allen,* the defendant argued with the judge in a most abusive and disrespectful manner. *Allen,* 397 U.S. at 341, 90 S.Ct. at 1059–60. The defendant continued to talk over the judge's objections, and terminated his remarks saying, "'When I go out for lunchtime, you're [the judge] going to be a corpse here.'" *Allen,* 397 U.S. at 340, 90 S.Ct. at 1059. At that point he tore the file that his attorney had and threw the papers on the floor, then he continued to talk back to the judge, saying: "'There's not going to be no trial, either. I'm going to sit here and you're going to talk and you can bring your shackles out and straight-jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial.'" *Allen,* 397 U.S. at 340, 90 S.Ct. at 1059. After more abusive remarks, the defendant was removed from the courtroom. *Allen,* 397 at 340, 90 S.Ct. at 1059.

In the present case, Petitioner was not disruptive; he cooperated with Judge Van Auser during the colloquy regarding his request to proceed *pro se* (T. 1–14). Nor did Petitioner evince any intent to disrupt or delay the proceedings. Indeed, Judge Van Auser noted: "In any event, Mr. Larrabee doesn't want any delay. That is what he says in the papers" (T. 12). It is clear that Petitioner's intent was not to be disruptive. Nevertheless, Judge Van Auser denied Petitioner his right of *pro se* representation on the possibility that "Mr. Larrabee personally **could** well prejudice not only himself, but the other defendants" (T. 13) (emphasis added). Speculation is not a proper basis for denying Petitioner's constitutional rights. In *United States v. Dougherty,* the court acknowledged that the unqualified right of self representation rests on an implied presumption that the court will achieve reasonable cooperation from the *pro se* defendant. However, the *Dougherty* court stated, "[t]he possibility that reasonable cooperation may be withheld, and the right later waived, is not a reason for denying the right of self-representation at the start." *Dougherty,* 473 F.2d at 1126.

Furthermore, Judge Van Auser's concerns that Petitioner's pro se representation could prejudice Petitioner himself are unwarranted. The Second Circuit has held that it is

---

1. In *People v. Carter,* the New York Court of Appeals stated:

 Under the appropriate circumstances, a defendant properly may be required to stand trial together with another individual. But the fact that he may be compelled to submit to a joint trial does not mean or imply that he thereby becomes guardian of the rights and interests of his codefendant. Quite to the contrary, a defendant at a joint trial retains his full panoply of rights, and may pursue his own interests, vigorously defending himself by all means lawfully at his command. Indeed, this is the underlying rationale for cases which have condemned or questioned joint representation of codefendants.

 *People v. Carter,* 86 A.D.2d 451, 457, 450 N.Y.S.2d 203, 207 (2nd Dep't 1982). (*citing Holloway v. Arkansas,* 435 U.S. 475, 489–490, 98 S.Ct. 1173, 1181–82, 55 L.Ed.2d 426 (1978) and *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680 (1942)).

error to deny a request to proceed *pro se* based on the defendant's lack of education, background, training or experience. *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir. 1986). The Second Circuit requires only that the defendant is "competent to stand trial and that he clearly [seek] to represent himself after being duly warned of the risks of doing so." *Johnstone,* 808 F.2d at 216.

In the present case, Petitioner was improperly denied his Sixth Amendment right to self-representation. His request was made knowingly, voluntarily, and unequivocally. Most importantly, since Petitioner's request was timely asserted before the commencement of trial, Petitioner enjoyed an unqualified right to proceed *pro se.* The resulting prejudice to himself, or his co-defendant's trial is not relevant to the granting of his request.

The Sixth Amendment right to self-representation reflects values of individual integrity, autonomy, and self-expression. *See Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540–41. Violation of the right to self-representation sacrifices these values even in the absence of effect on the outcome of the trial. *See Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984). Consequently, the Second Circuit has held that violation of a defendant's Sixth Amendment right to proceed *pro se* is never harmless error, and instead requires an automatic reversal of a criminal conviction. *Johnstone,* 808 F.2d at 218.

## C. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's writ of habeas corpus and orders the Petitioner's release unless the State promptly affords him a new trial.[2]

**IT IS SO ORDERED.**

---

**2.** At any such retrial, Petitioner will not be required to represent himself. Rather, "the State will be obligated at any retrial to afford [petitioner] all of his Constitutional rights, including the right to have the assistance of counsel and the right to represent himself." *Johnstone v. Kelly,* 812 F.2d 821, 822 (2d Cir.1987).