**Neal WIESNER, Petitioner,**

**v.**

**Robert ABRAMS, Respondent.**

**No. CV 87–3108.**

United States District Court, E.D. New York.

Dec. 4, 1989.

Neal Wiesner, Fishkill, N.Y., pro se.

Richmond County Dist. Atty., Staten Island, N.Y. by Yolanda L. Rudich and Karen F. McGee, for respondent.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Neal Wiesner ("petitioner"), currently an inmate at the Clinton Correctional Facility, petitions for habeas corpus relief pursuant to 28 U.S.C. § 2254, alleging (1) that he was denied his right to represent himself at his trial, (2) that he was denied effective assistance of counsel, and (3) that his trial was fundamentally unfair and amounted to a denial of due process.

For the reasons set forth below, the petition is granted and respondent is directed either to retry petitioner or to release him within ninety days of this order.

## FACTS

The evidence at trial indicated the following course of events. Petitioner and his victim, Cynthia Pearce, were involved for well over a year in an intimate personal relationship which terminated when, on March 15, 1983, Ms. Pearce moved out of the couple's apartment.[1] Stormy episodes marked the pair's relationship during the period prior to and following this date. Petitioner apparently persisted in attempts to resume the relationship, repeatedly beseeching Ms. Pearce to agree to see him. Ms. Pearce finally acceded to his demands on the evening of July 13, 1983.

According to Ms. Pearce, the pair met at the Clifton train station of the Staten Island Rapid Transit at 7 p.m. and commenced what for her became a night of terror. Petitioner pointed a gun at her, threatened her, led her to a pier, and ultimately forced her to her apartment, where he, still armed, held her against her will for over seven hours.

In a desperate attempt to escape, Ms. Pearce jumped from the window of her second story apartment to the sidewalk below. As she fled, petitioner fired several shots—five or six in all—in her direction. None of the bullets hit Ms. Pearce. As a result of the jump, however, she sustained

---

**1.** As described *infra* at 920–921, upon the trial court's denial of petitioner's request to proceed pro se, petitioner refused to allow his attorney to cross examine any but the first of the prosecution's witnesses, to call any witnesses on petitioner's behalf, or to deliver a summation. Accordingly, the foregoing statement of facts derives from a virtually unchallenged presentation by respondent at trial.

fractures in both her heels, tore cartilage in her chest, and injured the platebone in her back.

Petitioner was arrested that same night. On September 6, 1983, he was indicted for the following crimes: attempted murder in the second degree, P.L. § 110/125.25(1); reckless endangerment in the first degree, P.L. § 120.25; burglary in the first degree, P.L. § 140.30(1); unlawful imprisonment in the first degree, P.L. § 135.10; criminal possession of a weapon in the third degree, P.L. § 265.02(4); and criminal use of a firearm in the first degree, P.L. § 265.09(1).

Following a court-ordered C.P.L. Article 730 examination, petitioner was found competent to stand trial. In January 1985 petitioner was tried before a jury and convicted on all but the reckless endangerment charge. He was thereafter sentenced to concurrent indeterminate prison terms of eight and one-third to twenty-five years on the attempted murder charge, twelve and one-half years to twenty-five years for criminal use of a firearm, five to fifteen years for criminal possession of a weapon, eight and one-third to twenty-five years on the burglary charge, and one and one-third to four years for first degree unlawful imprisonment. The Appellate Division, Second Department, unanimously affirmed petitioner's conviction, *People v. Wiesner*, 129 A.D.2d 753, 514 N.Y.S.2d 514 (2d Dep't 1987), and the New York Court of Appeals denied leave to appeal. *People v. Wiesner*, 70 N.Y.2d 658, 518 N.Y.S.2d 1053, 512 N.E.2d 579 (1987).

This petition concerns a trial judge's efforts to deal with a difficult situation that developed during the pre-trial stage of the prosecution and culminated in petitioner's request for self representation as his trial was about to commence. Among the more relevant facts are the events that occurred during the fourteen months from indict-

ment (September 1983) to trial (January 1985). Although the record of this period is disturbingly incomplete, it is clear that it included a competency examination, a motion to dismiss, several suppression motions as well as appearances on petitioner's behalf by a succession of court-appointed attorneys, each of whom was ultimately relieved. It remains unclear to this Court whether these substitutions occurred because of counsel's or petitioner's dissatisfaction.

During this pre-trial period petitioner, a rather articulate and prolific litigant, submitted numerous letters to several justices of the Richmond County Supreme Court in which he discussed a host of matters, including his own assessment of the merits of his various pre-trial applications, his displeasure with his appointed attorneys, his desire to be brought to trial promptly, and his interest in possibly proceeding pro se.[2] Petitioner himself filed several motions, including a request to dismiss his indictment for failure to provide a speedy trial.

In November 1984, petitioner was represented by Rokki Knee Carr, Esq. in a hearing before Justice Thomas R. Sullivan on a motion to suppress statements. Midway through the hearing, Ms. Carr expressed concern to the court regarding her representation of petitioner. She remarked upon petitioner's penchant for tape-recording his conversations with her and the court proceedings, his unwillingness to talk with a psychiatrist provided him, and his habit of interrupting her when she addressed the court. Although Ms. Carr conceded that she was "not a diagnostician," she felt it necessary to "bring to the attention of an Appellate Court, if not to this very Court, the reality that [petitioner] is a person who has some difficulty trusting other people." (H. 6). It was her "belief" that petitioner "has some difficulty in

---

**2.** For example, in a letter dated June 7, 1984 to Justice Norman J. Felig, *see* respondent's exhibit 6, p. 6, petitioner expressed his displeasure with "the various delays in these proceedings," and also stated:

> Rather than going through the continuing agony of having to wait for another lawyer, for who knows how long, before I can move to

resolve this thing, what do you think about me going pro se. I know I have a right to, that's not what I am asking, and I know you can't tell me what to do. I guess I'm asking, what would the Court *like* me to do. I have a right to a little process, and it's [sic] absence is driving me crazy ...

trusting counsel and trusting people generally," and that he is, "although not a trusting person, a person who intellectually is capable of knowing precisely what he is doing in regard to this case, although he is not a lawyer." (H. 7–8). At the conclusion of the hearing on November 28, 1984, Justice Sullivan granted Ms. Carr's request to be relieved. Petitioner was introduced two days later to Felix Gilroy, Esq., an experienced Staten Island defense attorney, and agreed to his appointment as trial counsel. The trial was then adjourned for thirty days.

On the morning of January 2, 1985, as jury selection was about to begin, petitioner, accompanied by counsel, addressed the court. "Your honor," he began, "I have certain problems with going to trial at this time and let me state what they are." (Tr. 4). Petitioner stated that he was unhappy with his latest assigned attorney, Mr. Gilroy, both because he felt Mr. Gilroy had not adequately consulted with him in preparation for trial, and because he felt he should have the same attorney represent him in the state and an unrelated federal prosecution. (Tr. 6).[3] He stated further that he wished to ask his appointed attorney in the federal action, Mr. Sanford Katz, to represent him in his state trial. Justice Sullivan denied that application and ordered that jury selection begin. Petitioner then stated, "In that case, your Honor, I don't feel I can go ahead with Mr. Gilroy *and I will have to go ahead pro se if you insist.*" (Tr. 7) (emphasis added). He then stated further reasons for his request. He felt that Ms. Carr, who had represented him at the suppression hearing, had not researched the case thoroughly and would not allow him to testify, though he believed his testimony would have helped his defense. He acknowledged that although he was "not a lawyer and [has] no capability," he would at least have researched matters more thoroughly than his attorney had.

(Tr. 8). He then proceeded to describe matters pertaining to his case which he would need additional time to review, to which Justice Sullivan replied, "If this is again a request for an adjournment the request is denied." (Tr. 9). Petitioner then attempted to reopen motions already decided by the Court, insisting that he had a right to be heard on the motions. The Court demonstrated considerable patience before finally stating, "Mr. Wiesner, you constantly and consistently seek to make argument on anything that is said. Now, I tell you that the motions have been denied." (Tr. 13).

Thereafter, petitioner stated,

At this point I will have to say I would prefer to proceed pro se. I think it would be improper I do so. I don't feel competent. I don't feel [Mr. Gilroy] is well prepared to do so....

The Court denied the application, stating:

Mr. Weisner, this matter has been pending in this court now—this is its second year ...

Throughout this entire process, certainly for my involvement in this case which began in the early part of last year, it is apparent to me that you have exercised every opportunity to delay and to preclude the prosecution of this matter and resolution of the matter before the Court. I will not permit any further delays. Everyone has bent over backward to assist you and we will proceed now.

Jury selection was again delayed, as additional colloquies between petitioner and his counsel, petitioner and the court, and counsel and the court ensued. Mr. Gilroy remarked on discussions he had had with the assistant United States attorney handling the federal case against petitioner, noting the possibility of a disposition there; petitioner interrupted by stating, "Mr. Gilroy does not speak on my behalf, Your Honor." Mr. Gilroy indicated to the court

---

3. This prosecution was brought in the Southern District of New York before the Honorable Gerard L. Goettel, United States District Judge. A concise summary of the facts of that prosecution and some important insights into the petitioner's conduct and attitude are found in a letter from Judge Goettel to Justice Sullivan, dated November 6, 1987. This letter, part of the record before the Court, was forwarded to the Court by petitioner's letter, dated November 22, 1987.

that he was repeating all this "for the record so [petitioner] clearly understands the ramifications of proceeding without counsel and in terms of what a likely disposition would be." (Tr. 16)

After a brief pause, the conversation again turned to petitioner's request to proceed pro se. Counsel stated: "the defendant has just advised me that he wishes to represent himself ..." (Tr. 19). The Court then addressed petitioner at length:

THE COURT: Mr. Weisner, I would advise you most strongly, sir, that ... [t]his is a most serious matter. While, undoubtedly, you're very familiar with the facts in connection with it I do not believe that you are adequately able to represent yourself on the questions of law that are involved.

You have persistently, through this trial requested the assignment of counsel and numerous counsel have been assigned to you ... For various reasons they have sought to and have been relieved in the case. We are now on the eve of trial ... I would advise you that any individual who represents himself is held to—precisely the same standards as would an attorney in the course of such a proceeding. I do not think emotionally and from a standpoint of knowledge you have sufficient background to properly represent yourself ... it is not in your own interest to proceed representing yourself. (Tr. 19–21).

The Court then described Mr. Gilroy's qualifications, and concluded: "I do not think you are wise. I do not think it is right. I do not think that is in your best interest to represent yourself. I do not think that you have thought it through sufficiently to make such a determination." (Tr 22).

The Court continued: "You may have great intellectual capabilities, but you do not have the necessary background and training and experience and understanding, let alone the objectivity, that is necessary for an attorney to do a job properly." (Tr. 22)

The following exchange then occurred:

PETITIONER: At last we agree your Honor. But, there still is a problem with me going ahead with Mr. Gilroy at this point and it is based upon things I have been told by past counsel, by the court, and it is based upon the fact that Mr. Gilroy has not seen me—only seen me today. He feels ready to go to trial. There's an investigator, apparently, interviewed witnesses based upon my federal magistrate. He stated that I had an investigator.

THE COURT: There's an investigator—

PETITIONER: Which Mr. Gilroy has never spoken to.

THE COURT: Which this Court appointed. This is a sole basis on which you're asking for pro se.

PETITIONER: This whole basis; I don't feel comfortable. I agree with everything you say. I am not fit—

THE COURT: Your application is denied. Bring in the panel.

Throughout the trial petitioner continued to protest Mr. Gilroy's representation, frequently voicing his desire to represent himself. Although Mr. Gilroy commenced cross examination of the prosecution's first witness, petitioner, in protest to representation by Mr. Gilroy, eventually instructed Mr. Gilroy to conduct no further cross examination of that or any other witness, nor to call any witnesses on petitioner's behalf, nor to deliver a summation to the jury. Mr. Gilroy moved for a mistrial at the close of trial on the ground that petitioner should have been allowed to proceed pro se; the trial judge denied that request.

At the time of sentencing, the parties revisited the issue of petitioner's application to proceed pro se. Petitioner stated to the judge: "Your Honor I certainly felt I was more competent to represent myself than Mr. Gilroy," (S.3), to which the judge replied, "That is your opinion Mr. Wiesner and you are entitled to it. The Court rejected the argument." *Id.* Mr. Gilroy renewed the motion for a mistrial, which the judge again denied, stating:

Mr. Wiesner was the first to admit and it's a matter of record within the memory

of this Court, he felt he was not competent and capable of representing himself. *Therefore* the Court did not feel that his attempt to waive his right to counsel was knowing and voluntary, a knowing and voluntary one. (S.3) (emphasis added)

DISCUSSION

There is no dispute that petitioner sought to represent himself. Respondent argues, however, that Justice Sullivan's denial of petitioner's request was proper, asserting both that the request was not "unequivocal," and that petitioner's conduct indicates that the request reflected petitioner's desire to delay (indeed to sabotage) the litigation, and not a genuine desire to orchestrate his own defense unconstrained by the helpful but unwanted assistance of counsel. This Court disagrees.

■ The Constitution guarantees a criminal defendant the right to proceed pro se. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although the Sixth and Fourteenth Amendments guarantee the right to effective assistance of counsel, the Constitution does not force a lawyer upon a defendant. To do so is to "imprison a man in his privileges and call it the Constitution." *Faretta,* 422 U.S. at 815, 95 S.Ct. at 2531. Unless an accused agrees to representation by counsel, the defense presented by counsel is not deemed the defense guaranteed by the Constitution, for in a very real sense it is not *the accused's* defense. *Id.* at 821, 95 S.Ct. at 2534. As expressed by Chief Judge Brieant of the Southern District of New York,

[a]t trial, the criminal defendant is confronted with the possible loss of his liberty, his dignity and a host of other things; on this occasion above all others, he is entitled to speak freely, to control his own future and exercise his free will ... If freely chosen, the right to go to trial without counsel is protected by Constitutional, and indeed natural, law.

*Johnstone v. Kelly,* 633 F.Supp. 1245, 1248 (S.D.N.Y.), *aff'd,* 808 F.2d 214 (2d Cir.1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987).

■ Because an accused relinquishes many of the traditional benefits associated with the right to counsel when he decides to represent himself, he must declare his desire to proceed pro se "clearly and unequivocally," *id.* at 835, 95 S.Ct. at 2541, and must "knowingly and intelligently," *Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), waive the right to counsel. *Id.* In short,

[a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citation omitted).

Since the *Faretta* right to self-representation "reflects values of individual integrity, autonomy, and self-expression," *Johnstone v. Kelly,* 808 F.2d 214, 218 (2d Cir. 1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987), and thus "derives principally from interests beyond insuring that trial outcomes are fair," *id.,* our Court of Appeals has concluded, along with five other circuits, that denial of the right to proceed pro se requires automatic reversal of a criminal conviction. *Id.* (and cases cited therein). *Cf. Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540 ("although [the accused] may conduct his defense to his detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'") (citation omitted).

■ On the other hand, since the *Faretta* right could provide convicted criminals "a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel," *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15–16 (2d Cir.1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966) (hereinafter *Maldonado* ), a trial judge to whom a request to proceed pro se has been made must determine its genuineness. Therefore, when a criminal defendant asks

that he be allowed to represent himself, the court must determine (i) whether the request is clear, unequivocal and timely; (ii) whether the defendant knowingly, voluntarily, and intelligently waived his right to counsel; and (iii) whether the defendant has interposed the request solely to delay the trial or has otherwise engaged in conduct tending to delay the proceedings. *People v. Smith,* 68 N.Y.2d 737, 738, 506 N.Y.S.2d 322, 323, 497 N.E.2d 689, 690 *cert. denied sub nom., New York v. Smith,* 479 U.S. 953, 107 S.Ct. 444, 93 L.Ed.2d 392 (1986); *People v. McIntyre,* 36 N.Y.2d 10, 17, 364 N.Y.S.2d 837, 324 N.E.2d 322 (1974); *Fritz v. Spaulding,* 682 F.2d 782, 784 (9th Cir.1982).

With these principles in mind, the Court now turns to the record in this case. Notable is Justice Sullivan's understandable concern with petitioner's lack of legal expertise. He frequently remarked that petitioner was not "competent" to represent himself, that he lacked the requisite understanding of the law, and that, in Justice Sullivan's view, it was not in petitioner's best interest to represent himself. Indeed, his view of petitioner's lack of legal expertise also led Justice Sullivan to conclude that petitioner's waiver of the right to counsel was not knowing and voluntary.

■ It is well established that "a court determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation." *United States v. Bennett,* 539 F.2d 45, 50 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). Indeed, our Court of Appeals expressly held that it was error for a trial judge to deny a request to proceed pro se on the ground that defendant "lacked the 'requisite education, background, training or experience.'" *Johnstone v. Kelly,* 808 F.2d at 216. As *Johnstone* indicates, when a trial judge fears that a pro se defendant is unable to defend himself adequately, the proper course is not to deny self representation, but instead to appoint "stand-by" counsel, who is to assist the defendant but not to assume the primary role of defense

absent the defendant's request. 808 F.2d at 217. In short,

> even in cases where the accused is harming himself by insisting on conducting his own defense, respect for individual autonomy requires that he be allowed to go to jail under his own banner if he so desires if he makes the choice "with eyes open."

*Maldonado,* 348 F.2d at 15.

■ Admittedly, Justice Sullivan expressed a number of concerns with petitioner's request, and did not expressly identify any one issue as the sole basis for his decision to deny it. His concerns with petitioner's lack of lawyering skills were so often voiced, however, that those concerns were clearly material to his decision. To the extent they were, the denial of petitioner's request for self representation is error.

Respondent's next argument—that petitioner's request was "equivocal"—appears to be a post hoc justification formulated by respondent, and, with one possible exception, finds no support in the record no matter how carefully it is scrutinized.

Assessing equivocation begins with scrutiny of petitioner's actual statement to the trial judge:

> To invoke his Sixth Amendment right under *Faretta,* a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [an accused] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made.

*Dorman v. Wainwright,* 798 F.2d 1358, 1366 (11th Cir.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987). Mr. Wiesner surely did as much.

■ Once the request is *unambiguously stated,* however, the trial judge must determine whether the request was *unequivocal.* This is necessary because the trial court faces the difficult related problem of ascertaining whether there is an intelligent and voluntary waiver of counsel, *United States v. Bennett, supra,* so that the de-

fendant who exercises his right to appear pro se "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta*, 422 U.S. at 834–835 n. 46, 95 S.Ct. at 2540–41 n. 46. In other words, a trial judge must determine whether a defendant genuinely means what he says.

■ Respondent concedes the general proposition that an accused's lack of lawyering skills is not a proper ground for denying the right to proceed pro se, and instead makes a novel argument. In respondent's view, when the accused himself acknowledges his limitations, that rather sensible concession amounts to equivocation. This Court disagrees.

At a minimum, a defendant's acknowledgement that he is not well versed in the law indicates that that defendant indeed has his wits about him. More suspect would be a request for self representation by one who foolheartedly insists he is every bit as skilled as experienced counsel. Indeed, candid admission of one's own shortcomings relative to experienced counsel impressively suggests that the waiver that follows *is* knowing and intelligent. In short, we cannot seize upon a defendant's understanding of the perils of proceeding pro se and call it equivocation. Thus this Court must disagree with Justice Sullivan's conclusion that because petitioner admitted his inexperience in the law, his waiver of counsel was not knowing and voluntary.

■ In sum, *Faretta* and its progeny make clear that the Constitution protects a defendant's right to self-representation not because some defendants might not need the assistance of counsel, but because, aware of the benefits counsel could provide, certain defendants instead prefer to steer their own ships and thus forego those benefits. Thus the Constitution guarantees an accused the right to choose between himself and his counsel irrespective of their relative expertise in the law.

■ Respondent also argues that petitioner's request was equivocal because it came on the heels of a request for appointment of new counsel. Although respon-

dent's argument is inviting, our Court of Appeals has expressly rejected it under circumstances similar to those of the instant petition. In *Johnstone v. Kelly*, the State of New York argued that the defendant had invoked his right to proceed pro se "merely as a threat designed to obtain different appointed counsel," and cautioned the court against inviting future defendants "to use the threat of self-representation as a means for obtaining different counsel." *Id.*, 808 F.2d at 216. The Court found the argument "wanting," reasoning that "the risk of having to defend serious criminal charges without any lawyer should a request to proceed pro se be granted seems to outweigh any advantage from obtaining different counsel." *Id.* at 216, n. 1. The Court of Appeals concluded that "[a] request to proceed pro se is not equivocal merely because it is an alternative position, advanced as a fall-back to a primary request for different counsel." *Id.* at 216, n. 2. *See Faretta*, 422 U.S. at 810, n. 5, 835–36, 95 S.Ct. at 2529, n. 5, 2541.

■ Nor is the fact that petitioner may have been dissatisfied with earlier appointed counsel a basis for discrediting his request to proceed without counsel on the morning of trial. Petitioner clearly had something of a compulsive concern with the quality of lawyering provided him, but his request for a new lawyer on the morning of January 2 does not appear at all unreasonable. Mr. Gilroy had been appointed only one month earlier, and according to petitioner, had only met with his client once.

Perhaps petitioner's motives run deeper. Perhaps his dissatisfaction with Mr. Gilroy is but part of a more pervasive dissatisfaction with any counsel, a product of what might be either a distrust of all counsel or simply a relentless sense of self-determination, making petitioner among the more ideal candidates for self-representation. In any event, even if petitioner's dissatisfaction with Mr. Gilroy was not objectively reasonable, petitioner "'must have complete confidence in his counsel.' Without such confidence a defendant may be better

off representing himself." *Maldonado,* 348 F.2d at 15.

■ Finally, respondent argues that petitioner invoked his right to self-representation for the purpose of delaying his trial. Again, the record does not support this claim.

■ A request to proceed pro se is not untimely even if made on the day trial is to commence, because a defendant is entitled to have a last clear chance to assert his constitutional right before meaningful trial proceedings have begun. *Fritz v. Spaulding,* 682 F.2d at 784. It has also been held, therefore, that a request may not be denied on the ground that it has the *effect* of delaying the proceedings, since a request to proceed pro se that is made on the morning of trial may often necessitate a continuance. *Id. Accord Armant v. Marquez,* 772 F.2d 552, 555–556 (9th Cir.1985), *cert. denied,* 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 902 (1986).

Only when there is "an affirmative showing of *purpose* to secure delay" may a request to proceed pro se be properly denied. *Id.* (emphasis in original). As the Court in *Fritz* instructed,

> In determining whether a defendant's request to defend himself is a tactic to secure delay, the court may, of course, consider the effect of delay. A showing that a continuance would be required and that the resulting delay would prejudice the prosecution may be evidence of a defendant's dilatory intent ... [W]here [a defendant's] pre-trial conduct had already caused substantial delay, a showing that his motion included a request for continuance would be strong evidence of a purpose to delay. *The inquiry, however, does not stop there.* The court must also examine the events preceding the motion, to determine whether they are consistent with a good faith assertion of the *Faretta* right ...

682 F.2d at 784 (emphasis added). *See United States v. Smith,* 780 F.2d 810, 812 (9th Cir.1986).

Characterizing petitioner's conduct since indictment as obstreperous and dilatory, respondent asserts that petitioner's request to proceed pro se on the morning of trial should be viewed as but a part of his "ceaseless efforts to sabotage and delay" the prosecution against him.

A careful examination of the record in this case indicates that respondent's argument, while long on rhetoric, is rather short on substance. Indeed, while respondent's papers are replete with assertions of petitioner's dilatory tactics and intent, the record belies these claims. For example, respondent claims that petitioner was chronically dissatisfied with whomever was assigned to represent him, and that whether feigned, or genuine but petulant, this dissatisfaction caused a succession of counsel and of course, delay. The record, however, provides a disturbingly incomplete account of the events surrounding the successive substitutions of counsel. What it does reveal is that at least with respect to Ms. Carr and her predecessor, it was the attorney and not petitioner who sought the change in representation.

Even less borne out by the record is respondent's claim that petitioner in other ways "stalled the proceedings for nearly two years." First, the gap between indictment and trial was only fourteen months, not two years. In addition, the gap may not have been at all excessive, as there were numerous motions, a competency examination, and delays in appointment of counsel. Most important, the record reveals that petitioner, far from seeking delay, seems to have been rather impatient with the pace of the prosecution. His correspondence to the trial court frequently expresses this sentiment, and even includes a request to dismiss the indictment for failure to provide a speedy trial.

Lastly, the record belies respondent's suggestion that petitioner's request to proceed pro se was something obviously trumped up mid-trial to scuttle the proceedings or invite error. Because Mr. Gilroy was appointed only one month before petitioner's trial (a month that includes the holiday season) and only met with petitioner once, petitioner's misgivings about Mr. Gilroy's representation were not unwar-

ranted. Most important, petitioner had in numerous letters to the Court prior to trial discussed the possibility of representing himself.

In sum, this Court cannot agree with respondent's suggestion that the fourteen month period between indictment and trial was a delay occasioned by petitioner's contrivances. Moreover, while there is no doubt that petitioner's rather obsessive interest in his case, and perhaps petulant displeasure with his assigned counsel, may have had the *effect* of delaying the trial of the case, the record does not bear out the claim that petitioner's pre-trial conduct was undertaken for the *purpose* of delay.[4]

The Court recognizes that even the most patient trial judge might find that virtue sorely tested by petitioner's precocious behavior, and undoubtedly the trial judge denied the request to proceed pro se in part because he—the trial judge—did not want to delay the trial. It is equally certain, however, that the trial judge did not make the kind of inquiry and finding of actual purpose to delay required by *Fritz*.

Even if Justice Sullivan had made an actual finding of purpose to delay—which he did not—this Court, after considering the record as a whole and particularly the protracted discussion on the morning of trial, could not conclude that such finding was "fairly supported by the record." 28 U.S.C. § 2254(d). Indeed, it appears to this Court that petitioner clearly, unequivocally and genuinely invoked his right to defend himself. His request was denied to avoid any delay in the trial that was about to

commence, but not because petitioner sought delay.[5] Mindful of the understandable frustration Justice Sullivan must have experienced, this Court nevertheless concludes that the constitutionally proper resolution of this difficult situation was to have allowed petitioner to proceed pro se.

As a protest to the trial judge's denial of his request for self-representation, petitioner refused to allow his attorney to act as his attorney. The record indicates that on numerous occasions throughout the trial, petitioner stated to the Court that "Mr. Gilroy does not speak for me." Ultimately, petitioner refused to allow his attorney to cross examine the prosecution's witnesses, to call any defense witnesses, or to give a closing statement to the jury. Petitioner therefore argues alternatively that he was denied effective representation of counsel.

Although petitioner frames the issue in terms of a violation of his Sixth Amendment rights, *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in light of the rather unique circumstances of this case, the Court makes no express determinations using traditional Sixth Amendment analysis. This is in part because as the record and this discussion demonstrates, in this case the Sixth Amendment issue is essentially derivative. *Cf. United States v. Plattner*, 330 F.2d 271, 276 (2d Cir.1964) ("the right to counsel and the right to defend *pro se* in criminal cases form a single, inseparable bundle of rights, two fases [sic] of the same coin"), and also because this Court's

---

**4.** The Court is of course aware that the Appellate Division concluded that the trial court's denial of the request to defend pro se was proper because the request was "merely a calculated effort to further delay the proceedings." *People v. Wiesner*, 129 A.D.2d 753, 514 N.Y.S.2d 514, 515 (1987). Since the Appellate Division's conclusion was not made "after a hearing on the merits of a factual issue," 28 U.S.C. § 2254(d), it is not a "finding" entitled to section 2254(d)'s presumption of correctness. Even if it were, this Court concludes that it "is not fairly supported by the record." *Id.*

**5.** Given his earlier remarks, this Court is not surprised that the trial judge did not order a mistrial; it seems he was insistent upon trying petitioner's case that day no matter what. But

declaring a mistrial was not Justice Sullivan's only option. It certainly appears that he could have ordered a brief recess and attempted to resolve matters with petitioner, one way or the other—either agree to allow petitioner to proceed pro se, or convince him to allow his counsel to conduct a defense. If petitioner behaved as he did during the trial because he believed it was necessary to preserve his right to appeal the denial of his request to proceed pro se, the trial judge, or the counsel he imposed on petitioner, should have informed him otherwise. *See, e.g., United States v. Lorick*, 753 F.2d 1295, *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (no waiver of *Faretta* right where, after judge denied motion, defendant acquiesced and allowed attorney to represent him).

finding as to the violation of petitioner's right under *Faretta* is sufficient for issuance of the writ.

In sum, despite Justice Sullivan's best efforts at maintaining an orderly proceeding and his clear and emphatic admonitions to petitioner about self representation, the fact is that petitioner went to jail—for as many as twenty-five years—under neither his own banner nor the guidance of counsel, indeed without any defense at all, a constitutionally impermissible occurrence.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is granted. Respondent is directed either to retry petitioner or to release him within ninety days of this order.

SO ORDERED.