**Henry CANNON, Petitioner,**

v.

**Eugene S. LeFEVRE, Superintendent, Clinton Correctional Facility, Respondent.**

**80 Civ. 2479 (MEL).**

United States District Court,
S. D. New York.

Feb. 18, 1981.

Henry Cannon, pro se.

Mario Merola, Dist. Atty., Bronx County, Bronx, N. Y., for respondent; Philip M. Gaynor, Asst. Dist. Atty., of counsel.

LASKER, District Judge.

Henry Cannon was convicted of second degree murder after a jury trial in which he appeared pro se. He petitions for a writ of habeas corpus. On October 21, 1980, we ruled that the only claim raised in his petition which had been exhausted in the state courts is that he did not knowingly and intentionally waive his right to counsel.

After a review of the transcript of the proceedings held on Cannon's application to proceed pro se at his trial, we conclude that his waiver of his right to counsel was valid.

I

It should be noted initially that Cannon's competence to stand trial was borderline. The trial judge concluded that he was competent to stand trial based on the testimony of Dr. Henry Weinstein. Weinstein conceded that "[i]t's a close question" and that two of the three other psychiatrists who examined Cannon determined that he was incompetent to stand trial. However, Weinstein concluded that Cannon was competent, and that he could understand the charges against him and assist his lawyer. The determination that Cannon was competent to stand trial is not subject to review here.

During the hearing held to determine whether to grant Cannon's application to proceed pro se, the judge advised Cannon that he had a right to represent himself and

that his appointed counsel, Nicholas Arena,[1] would be available as "stand-in counsel" to advise him if he wanted. Cannon stated that he understood. (Tr. 3–4).

The judge then informed Cannon that he had been indicted for second degree murder and criminal possession of a weapon in the fourth degree. Cannon stated that he did not understand "[b]ecause that's not fair" and that he did not "have an indictment." (Tr. 4). After further discussion, the judge advised Cannon that a conviction for second degree murder resulted in a sentence of fifteen years to life imprisonment. Cannon responded,

"I understand it, very well, but I still don't admit it before any procedures start."

(Tr. 5).

In response to the judge's further questions concerning his age, education, previous trial experience and preparation for this case, Cannon either refused to answer until he was given "minutes of this thing," (Tr. 6) (presumably, the grand jury minutes) or made statements not addressed to the questions. Despite clarification from the judge that he was attempting only to determine whether Cannon's waiver of counsel was voluntary, competent and knowing, Cannon refused to respond, apparently concerned that he would waive his rights if he answered questions before seeing "the minutes." However, throughout the proceeding Cannon insisted on representing himself (Tr. 4, 12, 13, 17–18, 21), despite repeated advice from the judge against such a course.

The court granted Cannon's application, stating:

"Mr. Cannon, this court reluctantly is going to give you the opportunity to represent yourself in this case with the understanding that Mr. Arena is going to sit by as stand-in counsel."

(Tr. 24).

## II

The determination whether a criminal defendant should be permitted to waive representation of counsel brings into play competing constitutional rights of the defendant. On the one hand, the accused is entitled to represent himself, however unsound that course may be viewed. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). On the other hand, a waiver of the Sixth Amendment right to counsel must be knowing and voluntary. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

That Cannon's waiver of his right to counsel was voluntary is clear. He had told the judge during a conference held in chambers off the record that he wished to proceed pro se, and the record is checkered with Cannon's assertions that he wished to represent himself. Moreover, the judge twice advised Cannon against waiving his right to counsel.

That Cannon's decision was knowing is somewhat less clear. It is true that the record does not *in haec verba* establish that Cannon " '[knew] what he [was] doing and his choice [was] made with eyes open,' " or that Cannon was "literate, competent, and understanding." *Faretta v. California, supra*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1972)).

However, the record does establish that Cannon did understand at least the seriousness of the charges against him, since he did state that he understood that if he were convicted of second degree murder he could be sentenced to fifteen years to life. (Tr. 5). Moreover, the judge did give Cannon the requisite warnings and advice concerning the wisdom of representing himself. Although nowhere in the record did Cannon state that he understood these warnings, neither does the record establish that he did not. Finally, any attempt to establish more about Cannon's background was rendered futile by Cannon's refusal to respond to the questions put to him. As the Second Circuit has stated,

"the state judge was 'painfully familiar with [the defendant's] lack of cooperation

---

1. Arena was Cannon's third appointed counsel. Cannon discharged the first two.

and responsiveness and may have considered it futile to make *Harrison* [*United States v. Harrison,* 451 F.2d 1013 (2 Cir. 1971)] inquiries.' Had [the judge] refused to allow [the defendant] to represent himself, there would doubtless have been a claim of error, persuasively fortified by the Supreme Court's recent decision in *Faretta v. California* [*supra*] raising to a constitutional level the right to appear pro se. A criminal trial is not an obstacle course for the judge."

*United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131, 134 (2d Cir. 1975), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *see United States v. Tompkins,* 623 F.2d 824, 828 (2d Cir. 1980); *United States v. Rosenthal,* 470 F.2d 837, 844–45 (2d Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973).

We conclude that the record is sufficient to establish not only that Cannon's waiver was voluntary, but that it was made with "his eyes open" and that the trial court had no choice but to defer to Cannon's wish to represent himself. Moreover, Cannon was not left exposed and helpless. He was assisted by court appointed standby counsel who is not claimed to have been incompetent or to have failed in his responsibility. We think this was the proper constitutional solution.

Accordingly, the petition for a writ of habeas corpus is denied.

A certificate of probable cause is granted.

It is so ordered.