Willie **SPIRLES**, Petitioner,

v.

Thomas **RICKS**, Superintendent, Respondent.

No. 02–CV–6162L.

United States District Court, W.D. New York.

Jan. 16, 2004.

Willie Spirles, pro se, Malone, NY, for Plaintiff.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Petitioner Willie Spirles ("Spirles") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on four counts of robbery and two counts of grand larceny. For the reasons set forth below, Spirles' § 2254 petition is dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 7, 1996, Spirles and two confederates entered the A–Plus Mini–Mart on South Clinton Avenue in the City of Rochester at about 2:27 a.m. One associate fired a shot into the ceiling and the other ordered the cashier to empty the cash register. Meanwhile, Spirles pushed another employee to the floor and demanded that he hand over his money. As the three perpetrators fled the mini-mart with the cash drawer, $10, and a cigarette lighter, the one with the gun fired another shot into the wall. The entire robbery was captured on the store's surveillance camera.

A week later, police officers responded to a domestic-violence complaint at the residence of Spirles' girlfriend, Crystal Alexander ("Alexander"), because Spirles had beaten and pistolwhipped her. Alexander, for whom the police happened to have an outstanding bench warrant, was arrested at that time. After her arrest, she told the police that she had driven the get-away car in the A–Plus Mini–Mart heist, and she identified the three perpetrators of the robbery, including Spirles. After being picked up for questioning, Spirles admitted his involvement in the robbery.

At one of his first appearances before Monroe County Court Judge Nancy Smith, Spirles objected to being represented by a Monroe County Assistant Public Defender who had been assigned to the case. Spirles gave no reason for his dissatisfaction and Judge Smith advised him that he could hire his own lawyer if he wished to do so, but a new lawyer would not be appointed for him. At a later proceeding, Spirles again objected to being represented by the Assistant Public Defender, and requested that he act as his own attorney. Following a hearing held January 22, 1997, Spirles was allowed to represent himself at trial, although assigned counsel remained throughout trial as standby counsel.

On February 27, 1997, Spirles was convicted on all charges and was sentenced as a second violent felony offender to concurrent terms of 25 years for each robbery count and terms of 2 to 4 years on the grand larceny counts. Spirles, represented by counsel, appealed his conviction to the Appellate Division, Fourth Department. Spirles also filed a supplemental *pro se* brief raising additional arguments. The Fourth Department unanimously affirmed

his conviction September 29, 2000. The Court of Appeals denied leave to appeal on April 6, 2001. This federal habeas corpus petition followed.

## DISCUSSION

Spirles raises one claim for habeas relief: that the trial judge did not conduct a sufficiently searching inquiry into his ability to represent himself at trial. Spirles claims now that "certain facts" about his "mental, emotional and educational background" should have been developed at the January 22nd hearing. Petitioner's Memorandum of Law, Docket ("Dkt.") # 10 at 2.

██ Under the Sixth Amendment, the accused in all criminal prosecutions is guaranteed "the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Each defendant is also afforded the correlative right to dispense with legal assistance and represent himself. *See Faretta v. California,* 422 U.S. 806, 818–34, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *accord, e.g., Torres v. United States,* 140 F.3d 392, 401 (2d Cir.1998). Because a defendant who decides to act *pro se* abandons the traditional benefits associated with professional legal representation, the district court must ensure that the accused makes his decision " 'knowingly and intelligently.' " *Torres,* 140 F.3d at 401 (quoting *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525). When a defendant knowingly, voluntarily, and unequivocally elects to proceed *pro se,* however, a court is bound by the Constitution to honor that election, regardless of how "suicidal" it may appear to be. *Johnstone v. Kelly,* 633 F.Supp. 1245, 1248 (S.D.N.Y.), *rev'd on other grounds,* 808 F.2d 214 (2d Cir.1986).

██ Although there is no "talismanic procedure" to determine an effective waiver, *see United States v. Tracy,* 12 F.3d 1186, 1194 (2d Cir.1993), the trial court should engage the defendant in an on-the-record colloquy to ensure that he fully comprehends the ramifications of his decision. *See id.* at 1192; *see also Torres,* 140 F.3d at 401. The judge should consider " 'whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether he understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice.' " *United States v. Hurtado,* 47 F.3d 577, 583 (2d Cir.1995) (quoting *United States v. Calabro,* 467 F.2d 973, 985 (2d Cir.1972) (internal quotation marks and citation omitted)). In other words, the court must be convinced that the accused was aware of the dangers associated with self-representation and that his decision to conduct his own defense was made "with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525.

██ Although Spirles vigorously argued before the trial court that he should be allowed to proceed *pro se,* he now contends that the trial court erred in granting his request. The record reflects that Judge Smith carefully questioned Spirles about his education, background and familiarity with court proceedings. She also repeatedly warned him of the risk of proceeding *pro se.* There is no error here warranting habeas corpus relief.

Spirles, who had eleven years of schooling but no GED, worked as a custodian two years prior to his arrest and had held down "odd jobs," such as plumbing, doing electrical work, and cleaning houses. January 22, 1997 Hearing Transcript ("1/22/97 Tr.") at 4. Asked what type of work he was qualified to do, Spirles replied, "Well, I'm qualified to do anything you [sic] set your mind to[.]" *Id.* at 5. When the court asked if he could "read, write and speak and understand the English language," Spirles

replied, "[e]nough to comprehend." *Id.* at 3. He testified that he was not suffering from, nor had he suffered from in the past, any mental or physical condition that would affect his ability to understand the present proceeding. *Id.* He claimed that he had sufficient time to reflect upon his decision to represent himself.

When asked what was going to happen next in the process, Spirles replied, "Hopefully ready [sic] to pick the jurors and go to trial." *Id.* at 8. In response to the judge's query as to the purpose of the trial, Spirles said, "Innocent until proven guilty. I guess the DA got [sic] to bring his proof," since "[t]hat's how the court system basically is designed." *Id.* at 9. Spirles explained, "My role as an attorney will be to prove that I'm innocent." *Id.* at 10. The prosecutor's role, on the other hand, was to prove Spirles guilty. *Id.*

Apparently Spirles had never represented himself in court before, but he had a criminal record and was familiar with the criminal justice system and how a trial is conducted. Spirles had been convicted of one felony and had appeared in town court, city court, and juvenile court for numerous court proceedings. *Id.* at 22. Spirles agreed that, "unfortunately," he had seen "a lot" of court proceedings in his time. *Id.* at 22–23.

Asked why he wanted to proceed as his own attorney, he stated, "I feel that I'm more better [sic] to handle this situation right here being that I know the individual, you know what I'm sayin' [sic]?" *Id.* at 11. In response to the judge's caution that if he proceeded *pro se*, he would not be entitled to have an attorney giving him advice during the trial, Spirles replied, "That's cool with me." *Id.* at 12. He stated that he had discussed his case with his attorney and understood those discussions concerning issues in the case.

Spirles' assertions that he understood the judge's questions were not mechanical. On several occasions, Spirles indicated initially that he did not understand what the judge had said and asked for clarification. For instance, he said that he did "[n]ot fully" understand that he would be bound by the same rules of evidence as the prosecutor. Spirles paraphrased the judge's explanation, stating, "Certain things he can say and can't say?" *Id.* at 14. Spirles thus appears to have had the basic gist of how the evidentiary rules work.

The trial judge cautioned Spirles thoroughly about the risks of proceeding *pro se* and the substantial disadvantage to proceeding without counsel. Despite these warnings, Spirles' responses throughout revealed an emphatic desire to act as his own lawyer. I find that the trial judge's inquiry was sufficiently probing and that she had more than adequate evidence before her to conclude that Spirles' waiver was voluntary and that it was made "with [his] eyes open."

Moreover, Spirles was not left completely on his own at trial; the Assistant Public Defender remained throughout the trial as stand-by counsel and was available to answer any questions Spirles may have had. *See Cannon v. LeFevre,* 508 F.Supp. 789, 791 (S.D.N.Y.1981). In fact, counsel assisted Spirles in drafting and serving subpoenas, and Spirles conferred with him privately on several occasions during trial. *See* Trial Transcript at 230, 248, 353, 409, 431.

Spirles contends now, for the first time, that if certain school reports had been presented at the hearing, the judge might have declined his request to proceed *pro se.* Spirles has attached two psychological evaluations and a report card to his petition. One evaluation was completed by the Rochester City School District on December 12, 1983, fourteen years before the

hearing before Judge Smith. The other was even more ancient, having been prepared in October 1975. *See* Dkt. # 10, Exs. A and C. The report card was for the 1983 school year. *See id.,* Ex. B. These reports, submitted for the first time, provide no basis for relief. The psychological reports establish that Spirles had a Verbal IQ of 77 and a Performance IQ of 70, which placed him in the borderline range of intellectual function, although it was believed the results could be an underestimation of his true potential, but for his excessive and chronic absenteeism. Dkt. # 10, Ex. A. The report also noted that Spirles was a "volatile, aggressive and angry student." *Id.*

There are several reasons why these reports do not warrant relief. First of all, they are submitted here for the first time. These reports were not presented to the trial judge and were not submitted to the Appellate Division on appeal. Judge Smith asked Spirles on several occasions whether he had any history of mental illness or mental disease. On each occasion, Spirles denied any such problems. *See* 1/22/97 Tr. at 3. Furthermore, Spirles apparently conducted himself appropriately during court proceedings and gave no indication of any mental infirmity. Spirles' responses to Judge Smith were appropriate, *id.* at 20, and he even complimented her on her ability to be fair, *id.* at 13. In short, there was nothing elicited at the hearing that suggested a need for any further inquiry into Spirles' psychological records, prepared many years earlier when he was a student. In light of Spirles' responses at the hearing, the trial judge had no reason or obligation to delve into his school records.

Spirles' reasons for not wanting the Assistant Public Defender to represent him were not justified. The fact that the Assistant Public Defender may have seemed "friendly" with the prosecutor was no basis to find a conflict. The other reasons referenced by Spirles also fall far short of demonstrating any conflict of interest on the part of his assigned counsel. Furthermore, these issues were presented on appeal before the Appellate Division, and that court found no indication that appointment of substitute counsel was warranted. Such a finding is conclusive on this Court, unless Spirles provides clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). He has not done so here.

### CONCLUSION

For the reasons stated above, Willie Spirles' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Spirles has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a); *Coppedge v. United States,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.